UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| JAMES W. SHAUGHNESSY, | |
| Plaintiff, | No. 3:18-cv-939 (MPS) |
| v. | |
| EDWARD SOUTHERN, *et al.*, | |
| Defendants. | |

**RULING ON MOTION TO DISMISS**

Plaintiff James W. Shaughnessy brings this suit against Defendants Edward Southern, MD, Parkway Health, the Institute for Western Surgery, and the Central Hospital of Foshan in connection with Dr. Southern's alleged medical malpractice in performing a March 2016 back surgery on Shaughnessy in China.[1] Shaughnessy brings claims against Southern for lack of informed consent and medical malpractice arising from the surgery and post-operative treatment. (ECF No. 1 (hereinafter "Compl.").) Southern now moves to dismiss the complaint for lack of personal jurisdiction, expiration of the applicable statute of limitations, and operation of the prior pending action doctrine due to a similar action in China. (ECF No. 12.) For the following reasons, Southern's motion to dismiss for lack of personal jurisdiction is GRANTED.

**I.   Factual Background**

   **A.   Allegations**

The facts below are drawn from the complaint and, where relevant, documents incorporated therein or of which the Court may take judicial notice.

---

[1] Shaughnessy also lists "Does 1 Through 100, inclusive" as defendants in the case caption, but he does not list any Does in the "Parties" section of the complaint form, and he makes no mention of any Does in the factual allegations of his complaint. Thus, to the extent that Shaughnessy intended to sue any Doe defendants, his claims against them are dismissed because they are unsupported by any allegations, factual or otherwise.

Shaughnessy is a citizen of Connecticut with a residential address in Sherman, Connecticut. (Compl. at 1, 3.) Southern is a citizen of Minnesota. (*Id.* at 3.) Parkway Health is a Chinese corporation with its principal place of business in Shanghai, China. (*Id.*) The complaint does not allege the citizenship of the other defendants, though it lists a business address for The Institute for Western Surgery in Shanghai, China and for the Central Hospital of Foshan in Foshan City, China. (*Id.* at 2.)

Shaughnessy works for Praxair, Inc., a company headquartered in Connecticut. (Compl. at 4.) In April 2014, Praxair transferred Shaughnessy to its Shanghai office. (*Id.*) Shaughnessy began feeling pain in his back in the winter of 2015, and so went to see Southern. (*Id.*) Southern at the time worked for Parkway Health, a medical care facility in Shanghai that advertises itself as a Western-style medical facility, charges U.S. prices, accepts U.S. insurance (including insurance from Aetna, which the complaint asserts is a company based in Hartford, Connecticut), and actively markets its services to U.S. expatriates. (*Id.*)

Southern ordered an MRI, which showed a herniation at L4 and L5 as well as severe spinal stenosis. (*Id.*) Southern told Shaughnessy that the remedial laminotomy surgery was simple and had a 1% complication rate, meaning that in only one percent of cases would a dural tear occur, and that such a tear could easily be repaired during surgery. (*Id.*) Southern stated that he could tell from the MRI that Shaughnessy's surgery would be a success. (*Id.*) At no point did Southern mention that the complications of the surgery included numbness, lack of bowel, urinary or sexual function, or difficulty walking. (*Id.*)

Southern performed the laminotomy on Shaughnessy at the Central Hospital of Foshan on March 17, 2016. (*Id.*) The surgery resulted in what Southern described as a one-centimeter dural tear, which was repaired with a porcine patch. (*Id.*) About 12 hours after the surgery, Shaughnessy

2

began to experience numbness on his right side. (*Id.*) Although Southern was puzzled, he declined to order an MRI and told Shaughnessy that the only thing to worry about was developing a headache. (*Id.*)

As time progressed, Shaughnessy's symptoms became worse. (*Id.*) In the months after the surgery, Shaughnessy experienced difficulty walking, urinating, and with bowel movements, developed a limp, and could not feel anything on the right side of his body. (*Id.*) During this time, Southern repeatedly declined to order an MRI, saying that Shaughnessy's symptoms were the result of the dural tear. (*Id.*) Two months after the surgery, however, Southern ordered an MRI and diagnosed Shaughnessy with arachnoiditis. (*Id.*) Southern told Shaughnessy that he would never recover fully and recommended that Shaughnessy see Dr. Annand at Cedars-Sinai in Los Angeles, California. (*Id.*)

Shaughnessy traveled to Los Angeles and saw Dr. Annand. (*Id.*) Annand disagreed with Southern's reading of the MRI and believed that Shaughnessy should have been given an MRI immediately upon feeling numbness and a revision surgery within the first couple of weeks. (*Id.*) Annand and another surgeon performed a revision surgery on Shaughnessy. (*Id.*) They reported that the injury to Shaughnessy's L4, L5, and sacral area was inconsistent with Southern's report of a simple dural tear, and that any tear had to be larger than one centimeter. (*Id.*) Although the revision helped with Shaughnessy's walking, he continues to have loss of bowel function, urination with the assistance of a catheter, no sexual function, and no feeling in the right half of his body from his waist to his knee. (*Id.*)

Shaughnessy asserts two claims against Southern: one claim for lack of informed consent for failing to tell him that the surgery could result in difficulty walking, loss of bowel, bladder, and sexual function, and numbness; and another claim of malpractice for the "botched surgery, the

3

reckless failure to investigate Mr. Shaughnessy's post-operative recovery symptoms[,] which were inconsistent with a mere dural tear[,] and his failure to order an MRI in a timely manner[,] which would have allowed Mr. Shaughnessy to travel to Cedar-Sinai immediately for a revision." (*Id.* at 5.) He seeks $1,500,000 for out-of-pocket medical and travel expenses, $10,000,000 in damages for pain and suffering, and $20,000,000 in punitive damages. (*Id.*)

Shaughnessy also asserts claims against the corporate defendants. (*Id.*) In particular, he alleges that Parkway Health employed Southern, and that all pre- operative, post-operative, and diagnostic procedures took place in its Shanghai office. (*Id.*) In addition, the complaint alleges that Aetna paid Southern and Parkway Health, which in turn actively markets its services to U.S. citizens covered by health insurance provided by U.S. corporations. (*Id.*) He also alleges that the Institute for Western Surgery "actively facilitates and enables physicians with U.S. licenses . . . to acquire practicing privileges in China," and that it promoted Southern in its advertising. (*Id.*) Lastly, he alleges that Southern performed the March 17, 2016 surgery at the Central Hospital of Foshan, which "ha[s] responsibility for damages that result from surgeries that took place at their institution." (*Id.*) Shaughnessy asserts claims against these three corporate defendants for lack of informed consent, negligence during the March 17, 2016 operation and during pre- and post-operative care, fraudulent misrepresentation, and concealment. (*Id.*) The complaint also asserts various claims on behalf of Mr. Shaughnessy's wife, Tracy Dunbrook, but the Court previously dismissed those claims for failure to prosecute under Fed. R. Civ. P. 41(b). (ECF No. 24.)

### B. Dr. Southern's Affidavit

The following facts are relevant for the purposes of the Court's personal jurisdiction determination, and so I draw them from the complaint and from Southern's affidavit, construing doubts in plaintiff's favor. Shaughnessy did not submit affidavits or any other evidence.

Southern worked as a medical doctor for Parkway Health and the Institute for Western Surgery in Shanghai as a full-time surgical consultant between August 2013 and June 2018. (ECF No. 12-2, Affidavit of Edward Southern, M.D. ("Southern Aff.") ¶ 6.) He was a full-time resident of Shanghai during this period. (*Id.*) Southern then moved to the United States in June 2018. (*Id.* ¶ 7.) He briefly worked at Ludington Hospital in Ludington, Michigan before returning to China in mid-July 2018 to pack his belongings, and then moving to Minnesota. (*Id.*) In September 2018, Southern moved to Florida. (*Id.*) Since September 4, 2018, he has been employed "as a medical doctor as a United States government subcontractor" to the Eglin Air Force Base in Florida. (*Id.* ¶ 5.)

Southern has active medical licenses in Michigan, Minnesota, California, Wisconsin, Vermont, Colorado and Oklahoma. (*Id.* ¶ 4.) He does not have an active medical license in Connecticut. (*Id.* ¶ 8.) Although Southern was licensed in Connecticut between September 1991 and January 1993 while he was a resident at Yale University School of Medicine ("Yale"), and he was also a clinical instructor at Yale between July 1994 and June 1995, during both periods he practiced medicine under an institutional license held by Yale. (*Id.*)

Southern has not lived in Connecticut since June 1995. (*Id.* ¶ 9.) Since June 1995, he has only been in Connecticut a handful of times for alumni meetings, medical conferences or social visits. (*Id.*) For the last 6 years, Southern has not been in Connecticut at all. (*Id.*) Also since June 1995, Southern has not: (a) been employed in Connecticut; (b) maintained an office in Connecticut;

(c) practiced medicine or treated patients in Connecticut; (d) worked in Connecticut; (e) employed anyone in Connecticut; (f) solicited any patients or business in Connecticut; (g) owned or leased any real property in Connecticut; (h) had any financial holdings in Connecticut; or (i) used a computer or computer network in Connecticut. (*Id.* ¶ 10(a)-(i).) Southern never met with Shaughnessy or his wife, Tracy Dunbrook, in Connecticut. (*Id.* ¶ 11.)

As far as Southern knows, Parkway Health and the Institute for Western Surgery do not maintain any offices or facilities in Connecticut, employ any person, or solicit any business in Connecticut, and are not registered to do business in Connecticut. (*Id.* ¶ 12.)

On January 7, 2016, Shaughnessy presented to Southern at Parkway Health in Shanghai with complaints of chronic pack pain. (*Id.* ¶ 13.) Southern learned that Shaughnessy is a lawyer who had been transferred to China by his employer, Praxair. (*Id.*) Southern treated Shaughnessy between January 6, 2016 and May 9, 2016 exclusively at Parkway Health in Shanghai or at Foshan Chancheng Medical Center in Foshan, both in China. (*Id.* ¶ 14.) On March 16, 2019, Southern performed the surgery at issue on Shaughnessy in Foshan, China. (*Id.* ¶ 15). All of Shaughnessy's post-operative treatment with Southern was at Parkway Health in Shanghai. (*Id.* ¶ 16.)

On July 27, 2018, Queenie Jia, an attorney in Parkway Health's legal department, informed Southern that Shaughnessy had filed a lawsuit in the Shanghai Pudong Court, naming Southern as a defendant, for the malpractice alleged in this case. (*Id.* ¶ 17.) Jia also informed Southern that Parkway Health's insurance will not provide Southern coverage for a lawsuit in the United States. (*Id.* ¶ 18.) On July 30, 2018, Jia informed Southern that the Shanghai Pudong Court has "decided to skip the pre-court mediation and go straight to the court trial." (*Id.* ¶ 19.)

## II. Legal Standard

Shaughnessy, an attorney, is representing himself in this lawsuit. Generally, *pro se* plaintiffs are "entitled to special solicitude," and courts must interpret their submissions "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks and citations omitted). *Pro se* attorneys, however, cannot claim such "special consideration." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) (citation and internal quotation marks omitted); *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[T]he degree of solicitude may be lessened where the particular pro se litigant is experienced in litigation and familiar with the procedural setting presented . . . [A] lawyer representing himself ordinarily receives no such solicitude at all.") (internal citations omitted). As the Court has previously noted, Shaughnessy is a lawyer who has been admitted to this Court's bar since December 11, 1995. (*See* ECF No. 22.) Accordingly, Shaughnessy is entitled to no special solicitude.

In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the "plaintiff bears the burden of showing the court has jurisdiction over the defendant," and the "burden is apportioned based on how far the case has progressed." *Corning Inc. v. Shin Etsu Quartz Products Co.*, 242 F.3d 364, at *2 (2d Cir. 2000) (summary order). "The district court has considerable procedural leeway in deciding 12(b)(2) motions, and it may accept affidavits if it so chooses." *Id.* (internal quotation marks omitted). "[W]here . . . the district court relies solely on the pleadings and supporting affidavits, the plaintiff need only make a prima facie showing of jurisdiction." *Id.* (citations omitted). "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (citation omitted).

7

**III.     Discussion**

Southern moves to dismiss the complaint for lack of personal jurisdiction over him, because the applicable statute of limitations has expired, and under the prior pending action doctrine.  (ECF No. 12.)[2]  Because I agree that there is no personal jurisdiction over Southern in Connecticut, I grant Southern's motion to dismiss under Fed. R. Civ. P. 12(b)(2) and do not reach his other arguments.

"In assessing whether personal jurisdiction is authorized, the court must look first to the long-arm statute of the forum state . . . If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process." *Whitaker*, 261 F.3d at 208 (internal citations and quotation marks omitted).  Because the forum state here is Connecticut, I look first to Connecticut's long-arm statute for jurisdiction. Shaughnessy argues that the court can exercise long-arm jurisdiction over Southern under Conn. Gen. Stat. § 52–59b.  (ECF No. 18 at 6–7.)  I disagree.  Conn. Gen. Stat. § 52–59b authorizes jurisdiction over any nonresident individual who:

(1) Transacts any business within the state;

(2) commits a tortious act within the state. . .;

(3) commits a tortious act outside the state causing injury to person or property within the state [with exceptions not relevant here] if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial

---

[2] Southern also argues that the Court lacks diversity jurisdiction because Shaughnessy now in fact lives in China and thus is no longer domiciled in Connecticut.  (See ECF No. 25 at 1–2.)  Although the complaint alleges that plaintiff is domiciled in Connecticut, the plaintiff has also made statements indicating that he resided in China when the complaint was filed.  Nonetheless, because the question of personal jurisdiction is clear and the question of subject matter jurisdiction is not, the Court exercises its discretion to dismiss on personal jurisdiction grounds.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999) ("Where . . . a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction.").

> revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;
>
> (4) owns, uses or possesses any real property situated within the state; or,
>
> (5) uses a computer . . . or a computer network . . . located within the state.

Conn. Gen. Stat. § 52-59b(a). Southern is a nonresident individual, so the statute applies. (Compl. at 3; Southern Aff. ¶ 5.) But the allegations of Shaughnessy's complaint do not show that personal jurisdiction exists over Southern under any one of the five subsections, and Shaughnessy has submitted no evidence making such a showing either. In addition, Southern's undisputed evidence shows that none of the subsections apply.

First, Southern does not "transact any business" within Connecticut under Conn. Gen. Stat. § 52-59b(a)(1). Shaughnessy must satisfy two requirements to establish personal jurisdiction under this provision. *See Protegrity Corp. v. TokenEx*, LLC, No. 3:13-CV-1719 MPS, 2015 WL 222163, at *2 (D. Conn. Jan. 14, 2015). He must first make a *prima facie* showing that Southern "transacts any business" in Connecticut. *Id.* The Connecticut Supreme Court has construed the requirement of "transact[ing] any business" under this provision "to embrace a single purposeful business transaction," or where a nonresident who has not physically entered the state has "invoked the benefits and protection of Connecticut's laws by virtue of his or her purposeful Connecticut related activity . . . ." *Ryan v. Cerullo*, 282 Conn. 109, 119–20 (2007) (citations and internal quotation marks omitted). And second, Shaughnessy's "cause of action against [Southern must arise] from [Southern's] business activity in this state." *Protegrity Corp.*, 2015 WL 222163, at *2 (citations and internal quotation marks omitted); *see id.* ("A claim 'arises out of' a defendant's transaction of business when there exists a substantial nexus between the business transacted and

the cause of action sued upon." (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 31 (2d Cir. 1996)).

Shaughnessy cannot meet the provision's first requirement, as there is no allegation or evidence that Southern has had any purposeful Connecticut business activity since 1995. Southern does not have an active Connecticut medical license and has not practiced medicine under a Connecticut medical license since June 1995. (*Id.* ¶ 8.) Also since June 1995, Southern has not: (a) been employed in Connecticut; (b) maintained an office in Connecticut; (c) practiced medicine or treated patients in Connecticut; (d) worked in Connecticut; (e) employed anyone in Connecticut; (f) solicited any patients or business in Connecticut; (g) owned or leased any real property in Connecticut; (h) had any financial holdings in Connecticut; or (i) used a computer or computer network in Connecticut. (*Id.* ¶ 10(a)-(i).) For the last six years, Southern has not been to Connecticut at all. (*Id.*) Southern's "handful" of visits to Connecticut between 1995 and six years ago were exclusively for "alumni meetings, medical conferences, or social visits." (*Id.* ¶ 9.) These are not alone sufficient to conclude that Southern transacts business in Connecticut. *See Parras-Rosen v. William W. Backus Hosp.*, No. CV054002249, 2006 WL 2193804, at *2 (Conn. Super. Ct. July 19, 2006) (granting motion to dismiss for lack of personal jurisdiction where doctor provided affidavit showing that he "never practiced medicine in Connecticut; does not hold a license to practice in Connecticut; does not solicit business in Connecticut;. . . owns no property in Connecticut," and in the past 10 years had not received any referrals from Connecticut practitioners or physicians, even though a few of his patients resided in Connecticut). Even if this requirement were met, it is clear that Shaughnessy's claims for medical malpractice and lack of informed consent do not arise out of any of those Connecticut contacts. Rather, both the complaint and Southern's affidavit make clear that Southern performed the relevant surgery and all of the

pre- and post-operative treatment that is now the subject of Shaughnessy's claims in China. (Compl. at 4; Southern Aff. ¶¶ 13–16.) Southern never met with Shaughnessy or his wife, Tracy Dunbrook, in Connecticut, either in connection with the surgery or otherwise. (*Id.* ¶ 11.) Accordingly, Shaughnessy has not shown that Southern "transacts any business" in Connecticut under Conn. Gen. Stat. § 52-59b(a)(1).

Second, there is no evidence that a tort was committed in Connecticut under Conn. Gen. Stat. § 52-59b(a)(2), for the same reasons as described above—the relevant surgery and all of the pre- and post-operative treatment that is the subject of Shaughnessy's claims occurred in China. (Southern Aff. ¶¶ 13–16.)

Third, Southern did not commit a tortious act outside of Connecticut "causing injury to person or property within the state" under Conn. Gen. Stat. § 52–59b(a)(3). I have previously concluded that to determine whether the non-Connecticut tortious act caused injury "within" Connecticut under § 52–59b(a)(3), Connecticut courts would focus on the "location of the original event that caused the injury." *LaPrade v. Peyton*, No. 3:13-CV-01005 MPS, 2014 WL 2871584, at *2 (D. Conn. June 24, 2014). Here, the complaint alleges, and the evidence shows, that the original events that caused the injury—the surgery and allegedly deficient pre- and post-operative care—all took place in China, not Connecticut. (Compl. at 4; Southern Aff. ¶¶ 13–16.) Thus, the requirement that the tortious conduct cause injury "within the state" is not met. *See LaPrade*, 2014 WL 2871584, at *2 (concluding injury "within the state" requirement was not met where car accident causing injury took place in Maryland, regardless of where "resultant damages [were] felt by the plaintiff," a Connecticut resident).

Even assuming Southern had caused injury to a person "within" the state, Shaughnessy fails to meet the subsection's other requirements. Southern does not "regularly do[] or solicit[]

11

business, or engage[] in any other persistent course of conduct, or derive[] substantial revenue from goods used or consumed or services rendered, in the state," Conn. Gen. Stat. § 52–59b(a)(3)(A), for the same reasons as discussed in the "transacts business" prong. Nor is there any evidence that Southern "expect[ed] or should reasonably [have] expect[ed] the act to have consequences in the state and derives substantial revenue from interstate or international commerce," Conn. Gen. Stat. § 52–59b(a)(3)(B), because all the surgery and medical treatment was performed in China, and there is no allegation or evidence suggesting that Southern knew that the surgery would have consequences in Connecticut. (Southern Aff. ¶¶ 13–16.) Nor is there evidence that Southern derives substantial revenue from interstate or international commerce. In sum, Shaughnessy has not made a *prima facie* showing that he has met any of the requirements of Conn. Gen. Stat. § 52–59b(a)(3). *See Matto v. Dermatopathology Assocs. of New York*, 55 Conn. App. 592, 601 (1999) (affirming dismissal of malpractice suit for misinterpretation of tissue samples under Conn. Gen. Stat. § 52–59b(a)(3) where defendant's affidavits stated that none of the physicians who were allegedly negligent were licensed to practice medicine in Connecticut, rendered any treatment to the plaintiff in Connecticut, met with the plaintiff or traveled to Connecticut to speak with anyone concerning his treatment, maintained an office or advertised in Connecticut, or solicited the referral of the tissue samples, which were sent to the defendant by a Connecticut dermatologist); *see also LaPrade*, 2014 WL 2871584, at *2–3 (dismissing claim where no facts were pleaded that would support an inference that either § 52–59b(a)(3)(A) or (B) applied, including facts as to what portion of defendant's revenue was derived from interstate or international commerce).

Fourth and fifth, Southern's affidavit states that he has not owned or leased any real property in Connecticut since June 1995, and that he has not used a computer or computer network

in Connecticut since June 1995, and there is no evidence indicating otherwise. (Southern Aff. ¶ 10(g), (i).) *See* Conn. Gen. Stat. § 52-59b(a)(4), (5).

Accordingly, none of the provisions of Connecticut's long-arm statute establish personal jurisdiction over Southern. Shaughnessy's only argument for exercising personal jurisdiction over Southern is that he 'transacts business' in Connecticut because (1) Southern was "reimbursed for his diagnostic, surgical, and attending fees by Aetna," which is headquartered in Connecticut, and (2) Southern, "as a member of the Institute of Western Surgery and Parkway Health[,] was actively soliciting business from temporary residents of Shanghai domiciled in CT." (ECF No. 18 at 4; *see also id.* at 6.) Even after receiving Southern's affidavit substantiating his lack of connection to Connecticut, Shaughnessy has put forward no evidence to support these assertions. Even if he had, however, such evidence would not create jurisdiction under any provision of the long-arm statute. An individual's receipt of payment from a company that is based in Connecticut for services rendered elsewhere does not amount to "invok[ing] the benefits and protection of Connecticut's laws by virtue of his or her purposeful Connecticut related activity." *Ryan*, 282 Conn. at 120 (internal quotation marks omitted; construing Conn. Gen. Stat. § 52–59b(a)(1)). Nor does it shift the geographic location of the place where the medical malpractice cause of action arose – which remains China regardless of the location of the company that paid for the plaintiff's surgery. Nor would evidence of a single payment from Aetna suggest that Southern "derives substantial revenue from . . . services rendered, in the state," since no services were rendered in the state and there has been no indication of how much revenue he earned in any event. Nor would such a payment trigger any of the other provisions of the long-arm statute.

Southern's alleged "active[] solict[ation of] temporary residents of Shanghai domiciled in CT" does not afford a basis for jurisdiction either. Putting aside that Shaughnessy does not suggest

13

that Southern knew that Shaughnessy or any other "temporary [Shanghai] residents" were "domiciled in CT," marketing one's services in a foreign country to persons living in that country does not invoke the "benefits and protections of Connecticut's laws by virtue of . . . purposeful Connecticut related activity," even if one knows that the persons will one day return to Connecticut. *See* Conn. Gen. Stat. § 52–59b(a)(1). Nor does it suggest that one "should reasonably expect" one's services provided in the foreign country to a resident of that country "to have consequences in Connecticut." Conn. Gen. Stat. § 52-59b(a)(3). It fares no better under the other provisions of the long-arm statute, for reasons explained previously. Further, at least one Connecticut court has found that a Connecticut-based insurance company's payment of an out-of-state health provider is an insufficient basis to find personal jurisdiction over that provider under Conn. Gen. Stat. § 52–59b. *See Parras-Rosen v. William W. Backus Hosp.*, No. CV054002249, 2006 WL 2193804, at *2 (Conn. Super. Ct. July 19, 2006) (finding that "an entity in Connecticut that provides a Connecticut resident with medical insurance coverage that is used to pay for medical services of a healthcare provider in another jurisdiction . . . is an insufficient basis to subject that provider to the jurisdiction of Connecticut courts"); *see also Statek Corp. v. Coudert Bros. LLP*, No. 3:07-CV-00456 (SRU), 2018 WL 834227, at *14–15 (D. Conn. Feb. 12, 2018) (granting motion to dismiss where defendant's "out-of-state business for a Connecticut client" or "mail[ing] to Connecticut bills for services that were performed and directed elsewhere" did not satisfy Conn. Gen. Stat. § 52–59b(a)(1).)

Even after construing all inferences in Shaughnessy's favor, I find that Shaughnessy has failed to make a *prima facie* showing that any of the provisions of Connecticut's long-arm statute establish jurisdiction over Southern. Accordingly, Southern's motion to dismiss is GRANTED. Since I have determined that personal jurisdiction does not exist under Connecticut's long-arm

statute, I need not reach the question of whether exercising jurisdiction would comport with due process. *See Protegrity Corp.*, 2015 WL 222163, at *5 ("Because I have determined that Conn. Gen. Stat. § 52–59b(a)(1) does not reach [defendant], I need not evaluate whether exercising personal jurisdiction over it would comport with due process."); *LaPrade*, 2014 WL 2871584, at *3 (same).

**IV.     Conclusion**

For the foregoing reasons, Southern's motion to dismiss for lack of personal jurisdiction is GRANTED. (ECF No. 12.) Shaughnessy's claims against Southern are DISMISSED and the Clerk is directed to terminate Southern as a defendant. In addition, because there is no evidence on the docket that Shaughnessy has made efforts to serve defendants Parkway Health, the Institute for Western Surgery, or the Central Hospital of Foshan, Shaughnessy is hereby ordered to show cause within **21 days** why the Court should not dismiss his remaining claims for failure to prosecute under Fed. R. Civ. P. 41(b).

                                                    IT IS SO ORDERED.

                                                    /s/
                                           Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
             April 30, 2019